**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Caption in Compliance with D.N.J. LBR 9004-2(c)

**SHAPIRO, CROLAND, REISER,
APFEL & DI IORIO, LLP**
John P. Di Iorio
Continental Plaza II
411 Hackensack Avenue
Hackensack, NJ 07601
Tele: (201) 488-3900
Fax:  (201) 488-9481
Attorneys for Creditor, Mary Stachowiak

| | |
|---|---|
| In Re:<br><br>ELIZABETH M. CONVERY,<br><br>          Debtor. | Chapter 13<br><br>Case No.: 22-16516(SLM)<br><br>Hearing Date: January 25, 2022 |

## OBJECTION OF MARY STACHOWIAK TO CONFIRMATION OF DEBTOR'S PLAN

Mary Stachowiak ("Mary") hereby objects to the Plan filed by Elizabeth M. Convery ("Debtor") on September 19, 2022 [Document No. 14] (the "Plan") and, in support of her objection, respectfully says:

**I.   BACKGROUND**

1.   Mary is the sister of Debtor.

2.   Prior to the Debtor's bankruptcy filing on August 17, 2022 (the "Petition Date"), Mary brought actions in the Chancery Division and Probate Part of the Superior Court of New Jersey, Bergen County to set aside transfers made by Debtor to or for her benefit from the assets of her mother, Claire J. Mooney, and her now deceased father, John J. Mooney.

3.   As set forth in the Judgment and Decision annexed as Exhibits A and B, respectively, to the Objection To Confirmation of the Plan filed by John Conte, Esq., Guardian for

Claire J. Mooney and David Repetto, Esq., Administrator of the Estate of John J. Mooney (collectively the "Fiduciaries"), following a trial, the Superior Court of New Jersey determined that Debtor, in her capacity as a fiduciary, asserted undue influence over her mother and father and entered a Judgment in favor of Claire Mooney, individually and as beneficiary of the Estate of John Mooney, against Debtor in the amount of $684,587.02 (the "Judgment").

4.     In the Opinion accompanying the Order, the Superior Court of New Jersey set a briefing schedule for Mary's counsel to submit detailed billing and a brief addressing the issue of from whom Mary seeks to recover the attorneys' fees she expended in the action resulting in the Judgment. After this Court granted relief from the stay, an Order was entered in the Superior Court of New Jersey authorizing Mary to recover professional fees in the amount of $221,255.65 from Debtor. A copy of the State Court Order is attached hereto as Exhibit A.

5.     The Fiduciaries and Mary have or will be filing a complaint objecting to the dischargeability of Debtor's debts pursuant to sections 523(a)(2) and 523(a)(4) of the Bankruptcy Code.

## II.     DEBTOR'S ASSETS, LIABILITIES AND NET INCOME

6.     The primary asset listed in Debtor's schedules is an interest in a single family home located at 455 Lebanon Street, Wyckoff, New Jersey (the "Property') which Debtor values at $599,900 and asserts has a value of $39,135.50 above the mortgage debt and Debtor's exemption.

7.     Debtor's schedules also list the Debtor as the owner of three vehicles with an aggregate non-exempt equity of $22,002.80 according to Debtor for a total non-exempt equity of $61,138.30 in Debtor's assets.

8.     According to Debtor's Schedule I, she has monthly household income of $8,111.52 including $1,900 in retirement income and $4,000 in trust fund distributions for Debtor's non-

filing spouse.

9.      Debtor's Schedule J lists monthly expenses in the amount of $7,606.94 resulting in monthly net income of $504.58.

## III.    THE PLAN

10.      The Plan unintelligibly provides for Debtor to make payments from future earnings of $500 per month starting September 1, 2022 for approximately six months and then $1,850 for six months for each of the next five years.  It is not clear when and how much in total payments Debtor will make under the Plan.  Read literally, it appears Debtor proposes to make payments totaling $21,500 under the Plan, i.e., $3,000 in the first six months and $3,700 per year for the next five years.

11.      The Plan proposes to pay administrative claims of the Chapter 13 Trustee as allowed and the administrative claims of Debtor's counsel, estimated to be $3,000.  Secured claims are not affected by the Plan.  Finally, the Plan proposes to pay non-priority unsecured claims not less than $60,279.75 distributed pro rata.[1]

## IV.    OBJECTION TO CONFIRMATION OF THE PLAN

12.      Mary incorporates each and every objection of the Fiduciaries and the Chapter 13 Trustee to confirmation of the Plan.  In addition, Mary objects to confirmation of the Plan on the grounds that it has not been proposed in good faith in violation of section 1325(a)(3) of the Bankruptcy Code.

13.      In that regard, Mary has provided voluminous documents to the Chapter 13 Trustee demonstrating that the Debtor refinanced the Property on numerous occasions shortly before the Petition Date and extracted a significant amount of equity from the Property that would otherwise

---

[1] Since it is not clear when and how much Debtor intends to pay pursuant to the Plan, it is not possible to determine whether the Plan is feasible with Debtor's net monthly income of $504.58.

have been available to creditors.

14.     Specifically, the documents show that as of March 15, 2021 there was a mortgage lien against the Property in favor of Chase with a balance of $72,978 due.

15.     On March 16, 2021, Debtor refinanced the Property with a $200,000 loan, which indicates that Debtor received approximately $127,000 from the refinancing.

16.     Thereafter, on November 17, 2021 Debtor granted a mortgage to the Convery Trust (the "Trust"), in which her husband has a beneficial interest, in the face amount of $250,000. The mortgage executed in connection with the loan from the Trust states that the Debtor acknowledges receiving $160,000 and Debtor's petition reflects the Trust mortgage debt as $82,000. Thus, Debtor drew down an additional $160,000 in equity from the Property.

17.     Finally, Debtor refinanced the Property for $410,000 on January 11, 2022. Assuming she paid off $200,000 on the first mortgage and approximately $80,000 on the Convery Trust mortgage, Debtor received an additional $130,000.

18.     In total, Debtor received approximately $417,000 from the refinancings of the Property since March 2021 and eroded the substantial equity in her home shortly before the filing.

19.     At the Meeting of Creditors, Debtor testified that she used the loan refinancing proceeds to pay down a portion of the Trust mortgage, some credit card debt and attorneys' fees, not only relating to the litigation brought by Mary, but also for representation of her adult son.

20.     Debtor did not receive any reasonably equivalent value for the payment of her adult son's attorneys' fees and any such payments are therefore avoidable.

21.     It has been held that a substantial divestiture of assets, including by way of eroding the equity in an asset, shortly before a bankruptcy filing prior to entry of a judgment results in a plan not being filed in good faith. In Re Baird, 234 B.R. 546 (Bankr. M.D. Fla 1999).

22.     Similarly, debtors are not entitled to confirmation of a plan which proposes continued payments of secured debt but only a nominal distribution to unsecured debts, a large portion of which sound in fraud.  In Re Altmann, 256 B.R. 468 (Bankr. S.D. Miss. 2000).

23.     Here, it is clear that the findings made in connection with the Judgment entered in the Superior Court of New Jersey collaterally estops Debtor from being able to defend the non-dischargeability of the Judgment claim of the Fiduciaries and the attorneys' fees claim of Mary.

24.     That conclusion, coupled with Debtor's conduct in eroding the equity in her assets shortly before her bankruptcy filing and fraudulently transferring a portion of those assets to her son, requires that the Court deny confirmation of the Plan.

SHAPIRO, CROLAND, REISER,
APFEL & DI IORIO, LLP
Attorneys for Creditor, Mary Stachowiak

Dated: January _13_, 2023          By: _____
                                         John P. Di Iorio, Esq.

# EXHIBIT A

FILED

OCT 28 2022

James J. DeLuca, J.S.C.

*This order was prepared and filed by the Court.*

| | |
|---|---|
| CLAIRE J. MOONEY,<br><br>          Plaintiff,<br><br>   v.<br><br>ELIZABETH CONVERY,<br><br>          Defendant. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>BERGEN COUNTY<br><br>DOCKET No. BER-C-178-20 |
| IN THE MATTER OF THE ESTATE OF<br>JOHN J. MOONEY,<br><br>          Deceased. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>BERGEN COUNTY: PROBATE PART<br><br>DOCKET No. BER-P-407-20<br><br><br>ORDER REGARDING<br>LEGAL FEES AND COSTS |

This matter having come before the court upon the application (the "Application") of Hellring, Lindeman, Goldstein & Siegal, LLP ("Hellring Lindeman") seeking, on behalf of Mary Stachowiak, an award of fees and costs associated with these matters in accordance with the Decision After Trial and Judgment entered on July 8, 2022; and the court having considered the papers submitted in support of the Application, including the certification of services of Hellring Lindeman, and the papers submitted in opposition to the Application; and the court having determined, pursuant to RPC 1.5(a) and applicable New Jersey case law, that the fees charged are reasonable as to the hourly rates and the time expended except as set forth in the Decision Regarding Legal Fees; and notice of the Application having been given to all parties in interest; and for good

cause shown, and for the reasons set forth in the Decision Regarding Legal Fees issued simultaneously herewith and incorporated herein by reference,

It is on this __28th__ day of OCTOBER, 2022, ORDERED and ADJUDGED as follows:

1.    Hellring Lindeman's request for legal fees from the Estate of John J. Mooney is DENIED.

2.    Hellring Lindeman's request for fees directly against Elizabeth Convery ("Defendant") is GRANTED, and Hellring Lindeman is awarded legal fees and costs in the amount of $221,255.65, consisting of $163,869.75 in legal fees, $10,906.40 in costs and expenses, and $46,479.50 for fees and costs incurred by Wiss & Co.

3.    Since the court finds that any award of the Hellring Fees may adversely impact on Ms. Mooney's ability, whether individually or as the beneficiary of the Estate of John J. Mooney, to recover monies against Defendant pursuant to the Judgment entered on July 8, 2022 and such recovery may impact on Ms. Mooney's future care and maintenance, any monies recovered in connection with the Hellring Fees shall be paid to John A. Conte, Jr., Esq., the guardian of Ms. Mooney. Once Ms. Mooney recovers the sum of $684,578.02 awarded pursuant to the Judgment entered on July 8, 2022, plus any post-judgment interest, then any amounts recovered may be used to reimburse appropriate parties for the Hellring Fees as described herein.

4.    A copy of this Order Regarding Legal Fees and Costs and Decision Regarding Legal Fees is being forwarded by the court by e-mail to counsel for the parties.

Honorable James J. DeLuca, J.S.C.

2